## COMMONWEALTH *vs.* MICHAEL SCIONTI.

No. 10-P-828.

Middlesex. September 12, 2011. - February 15, 2012.

Present: RAPOZA, C.J., CYPHER, GRASSO, COHEN, & AGNES, JJ.

*Practice, Criminal,* Competency to stand trial, Presence of defendant, Confrontation of witnesses, Judicial discretion. *Due Process of Law,* Competency to stand trial, Presence of defendant in courtroom. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Competency.

Discussion of the legal principles governing a determination of a criminal defendant's competency to stand trial [272-273]; and the application of the abuse of discretion standard of review thereto [273].

A Superior Court judge did not abuse her discretion in determining that, without need for any further mental health evaluation, a criminal defendant was competent to stand trial, in light of the record before the judge, including her own observations of the defendant, several prior mental health evaluations, testimony of expert witnesses, and reports of court officers. [273]

Discussion of a criminal defendant's loss, though misconduct, of the right to confront the witnesses against him at trial. [273-275]

A Superior Court judge did not abuse her discretion in ordering that a criminal defendant be restrained by handcuffs while participating in his trial (through an audio-video link) from a jail cell, where the judge acted deliberately and fairly and with due regard for the safety of the defendant as well as court personnel. [275-276]

Statement that a warning from a judge that a criminal defendant will be removed from the court room if his misconduct continues and the defendant's presence in the court room before such removal is ordered are not required in circumstances where the defendant threatens violence if brought into the court room and engages in disruptive behavior to prevent the judge from addressing him. [276-277]

A Superior Court judge did not abuse her discretion in concluding that a criminal defendant had forfeited, through misconduct, his right to confrontation and would not be brought into the court room during trial, where the judge gave the defendant numerous opportunities to come into the court room, provided the defendant with access to counsel at all times, and installed a communications system to enable the defendant to hear the proceedings in the court room. [277-280]

There was no merit to a criminal defendant's argument that a judge's conclusion the defendant had forfeited his right to confront the witnesses against him at trial violated Mass.R.Crim.P. 45. [280-281]

INDICTMENT found and returned in the Superior Court Department on November 20, 2007.

Pretrial hearings on the issue of the defendant's competency were had before *Kathe M. Tuttman*, J., and *S. Jane Haggerty*, J.; and the case was tried before *Diane M. Kottmyer*, J.

*David M. Skeels*, Committee for Public Counsel Services, for the defendant.

*Sean J. Casey*, Assistant District Attorney, for the Commonwealth.

AGNES, J. The defendant, Michael Scionti, appeals from his conviction of assault and battery on a correction officer. The two issues raised on appeal are whether he was competent to stand trial and, if so, whether he was denied due process of law when the judge conducted the jury trial without his presence in the court room. We affirm because there was an adequate evidentiary basis for the judge's determination that the defendant was competent and, due to his obstreperous and threatening behavior, the defendant forfeited his right to be present in the court room during trial.

*Factual background.* This is a case in which three experienced Superior Court judges at five separate hearings gave careful consideration to the defendant's persistent refusal to come into the court room and its relationship to the issues of competency and confrontation.

1. *Hearing on September 29, 2009.* The defendant's case was originally scheduled for trial before a Superior Court judge sitting in Lowell on September 29, 2009. The defendant was in the lockup near the court room. Defense counsel informed the judge that the defendant did not wish to be present and had refused to come into court the last several times the case was before the court. This was confirmed by a court officer who told the judge that the defendant refused to cooperate with him.

The judge ordered a screening examination for competency to stand trial. See G. L. c. 123, § 15(*a*). The examination was conducted by Dr. Joyce Perrotta, a forensic psychologist, who was familiar with the defendant and his history. She had evaluated the defendant four times in District Court prior to September 29, and she described several previous mental health evaluations of the defendant. In particular, she described a report by

the staff at the Bridgewater State Hospital following an in-patient commitment only four months earlier in which clinicians found no evidence of mental illness. She also recounted the details of her own examination and opined that the defendant was competent to stand trial.[1] In view of the fact that it was after 1:00 P.M., the judge excused jurors for the day.

Following the lunch recess, defense counsel reported that he again tried to speak to his client, but that the defendant would not agree to come into court and said he would physically resist any effort to bring him into the court room. The judge requested assistance from a court officer. After a visit to the lockup to see the defendant, the court officer reported to the judge that the defendant said he would use physical force to resist any attempt to bring him into the court room. The case was continued for trial until the following week.

The judge found that the defendant had been informed of his right to be present in the court room, but that he had forfeited it by his conduct. However, the judge further ruled that she made this determination without prejudice so that the issue could be revisited by the trial judge.

2. *October 6, 2009, hearing.* The case was next before the court for trial in Lowell on October 6, 2009, before a different judge. The defendant remained in the lockup near the court room. Defense counsel submitted four evaluations of the defendant's competency: one from 2002, one from 2008, and two from 2009. Defense counsel explained that the case had previously been scheduled to be resolved by a change of plea on July 12, 2009, but the proceeding did not take place because the defendant refused to come out of the lockup and into the court room.

A court officer reported that he and defense counsel had visited with the defendant in the lockup. The defendant stated that he did not want to come into the court room. When the court officer brought the defendant's brother to the cell in an effort to encourage the defendant to reconsider his position, the defendant spat at the court officer and threatened to kill him for involving his family in his case. The judge determined that there had been no change on the issue of competency from the

---

[1]The testimony and opinions expressed by Dr. Perrotta are discussed later in this opinion.

time of the hearing the preceding week. Defense counsel continued to urge that the defendant was not competent. The judge decided that the case would be called for trial the following day in Woburn.

3. *Hearing on October 7.* On October 7, 2009, the case was called for trial in the Superior Court sitting in Woburn before a third judge. The defendant was in the court house lockup with a audio-video link to the court room. The trial judge reported that she had been briefed by other judges about the defendant's recent behavior. Defense counsel told the judge that as on the previous day his client refused to come into court. The judge tried to speak to the defendant through the audio-video link, but he interrupted her, spat, and began to bang so loudly that the judge could no longer converse with him.[2] The judge determined that the defendant did not want to be in the court room and could not safely be brought into the court room, and she gave defense counsel an opportunity to confer privately with his client.

The trial judge conducted another hearing before jury selection began. The hearing was broadcast to the defendant, who remained in the lockup. There was testimony from court officers about the defendant's recent violent and threatening behavior, including an incident before the defendant was handcuffed in which he spat in an officer's face when informed he would be brought into the court room. There also was testimony that it was only when the defendant was told his case was going to trial that he became disruptive. The judge found that as the hearing was taking place the defendant was banging on his cell door with such force that he had damaged the cell door and was likely injuring his hands.

After reviewing some pretrial motions with counsel, the judge inquired of the court officer staff about her options. The court officer reported that the defendant stated again that he would physically harm at least one officer if an attempt was made to bring him into the court room. Consideration was given to using a "restraint chair" in the court room to prevent the defendant from leaving his seat. Defense counsel told the judge that

---

[2]Based on an investigation by a court officer, the judge determined that the equipment was functioning properly and that the defendant could hear what transpired in the court room if he did not bang on his cell.

the defendant had always cooperated with him, and that he did not want his client in restraints and preferred to have the defendant participate from the lockup by means of an audio feed only in order to prevent the jury from seeing him. The judge decided that based on all the information before her, there was not a basis for another competency screening examination under G. L. c. 123, § 15(*a*). The judge determined that it was necessary to keep the defendant in handcuffs.

The judge concluded that it was not feasible to empanel a jury that day, that the defendant had waived his right to be present, and that arrangements would be made for the defendant to participate by means of an audio hookup between his cell at the Cambridge jail and the court room.

4. *Arrangements for the defendant's participation in his trial.* The case was called for trial again the following day, October 8. The defendant was at the jail in Cambridge. He was able to hear the court proceedings by means of a speaker telephone that was located outside his cell. There was no video feed. There was a brief conversation between the judge and the defendant over the audio link in which she told the defendant that the trial was going to commence, but that his attorney would first call him on a private line. The defendant acknowledged that he could hear the judge, but before any conversation ensued the judge instructed the defendant not to speak before consulting privately with his attorney. A short time later, defense counsel reported that he had talked to his client and was concerned that the defendant might say something during the trial that would be harmful to his interests. Arrangements were made so that the defendant would be able to hear the proceedings in court without the judge hearing the defendant. In addition, a second attorney from the Committee for Public Counsel Services was assigned to be present with the defendant in Cambridge during his trial. Defense counsel was informed that the trial would be suspended at any time he deemed it necessary to consult with his client.

5. *Competency hearing on October 8.* After reviewing a transcript of the hearing conducted on September 29, 2009, and prior written mental health evaluations,[3] the trial judge con-

---

[3]The transcript included testimony given by Dr. Perrotta on September 29, 2009. At that hearing she described four prior evaluations of the defendant, of

ducted a further hearing on the defendant's competency prior to empanelment. The defendant was allowed to participate by speaker phone. The judge heard testimony from Dr. Perotta and Dr. Robert Joss, a forensic psychologist retained by the defendant.

Although Dr. Perrotta did not reinterview the defendant prior to testifying, she was asked by counsel to assume certain facts — namely all the various disruptive behaviors by the defendant since her last examination, including his several interactions with court officers. Dr. Perrotta assumed all the facts to be true and expressed the opinion that those facts would not affect her earlier opinion that the defendant was competent.[4]

6. *The judge's findings.* The trial judge found that on the basis of the totality of the evidence, including the various psychological evaluations she reviewed and the testimony of the psychologists and court staff, the defendant was competent. She

which three (in 2002, 2006, and 2007) were for competency. Dr. Perotta informed the court that she did not recommend a further evaluation under G. L. c. 123, § 15(*b*), following her 2006 and 2007 evaluations. She said the defendant had a history of attention deficit disorder and learning disabilities. She added that there also were two other Bridgewater State Hospital commitments under G. L. c. 123, § 18A, once in 2003 "when he was thought to be fabricating symptoms of mental illness, and then again in February of 2006 when he was observed for three weeks without signs or symptoms of mental illness. He was not given a diagnosis, nor was he treated for mental illness." Finally, Dr. Perotta reported that the defendant had been housed at the Cambridge jail awaiting trial and was not taking any psychiatric medications.

At the September 29 hearing, Dr. Perotta also explained that when she evaluated the defendant earlier that day, he asked to speak with her alone. She agreed but had to suspend the interview and call for assistance when the defendant exposed himself to her. She was able to complete the interview. The defendant understood the charges against him, knew that he had the option of going to trial or a change of plea, knew what the sentence recommendations would be for each choice, and seemed indifferent over the outcome. It was Dr. Perotta's opinion that there was no need for a further examination pursuant to G. L. c. 123, § 15(*b*), and that the defendant was competent.

The transcript also included the observations made by court officers and their interactions with the defendant. They reported the defendant's aggressive behavior, his threats to do violence and to infect them with hepatitis, which he claimed to have and for which he claimed not to have been treated, and to masturbate if brought into the court room.

[4]Dr. Joss testified that he was not able to conduct an evaluation of the defendant on that day. He had evaluated the defendant in the past on two occasions. He conceded that the defendant had scored "high" for malingering in the past but that based on his complex presentation he should be sent to Bridgewater State Hospital for further evaluation.

did not credit Dr. Joss's opinion that the defendant lacked competency due to an "inability" to assist his counsel. She observed that a person is not incompetent simply because he chooses not to communicate with his attorney when he has the ability to do so. She also found that the defendant "has an agenda and that he has a purpose in acting the way he is acting." The judge found support for this based on the evidence that there had been no petitions filed by jail authorities for a mental health evaluation of the defendant, see G. L. c. 123, § 18(*a*), in the preceding week. She observed that none of the reports indicated that the defendant suffered from a mental illness.

7. *Jury selection.* Defense counsel was given an opportunity to confer privately with his client before being required to make any challenges to potential jurors. After jury selection, the case was recessed until the following day.

*Discussion.* 1. *The defendant's competency.* a. *The legal framework.* It is a violation of a defendant's due process right to a fair trial under both the Federal and Massachusetts Constitutions to proceed to trial when the defendant is not competent. *Pate* v. *Robinson*, 383 U.S. 375, 378 (1966). *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). The test for determining competency to stand trial is whether the defendant has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings." *Commonwealth* v. *Hung Tan Vo*, 427 Mass. 464, 468-469 (1998), quoting from *Commonwealth* v. *DeMinico*, 408 Mass. 230, 236 (1990). The Commonwealth has the burden of proving that the defendant is competent by a preponderance of the evidence. *Commonwealth* v. *Crowley*, 393 Mass. 393, 400-402 (1984).

Whenever there is "a substantial question of possible doubt" whether the defendant is competent, the judge must conduct a hearing, regardless of whether the issue is raised by counsel, and inquire into the defendant's competency. See *Commonwealth* v. *Hill*, 375 Mass. 50, 62 (1978). See also note to Mass. G. Evid. § 601(c), at 157 (2011). A hearing does not necessarily require the taking of evidence, especially where there are recent written reports of mental health evaluations. The judge is permitted to rely on her own observations and direct knowledge of

events, testimony from court officers and court staff, and the defendant's statements and conduct, as well as the impressions of counsel. See *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 752 (1981). Not every disruptive act or instance of abnormal behavior requires the judge to conduct a hearing. See *Commonwealth* v. *Martin*, 35 Mass. App. Ct. 96, 98 (1993). "A trial judge is only required to act reasonably on the facts before him." *Commonwealth* v. *Barnes*, 399 Mass. 385, 390 (1987).

b. *Standard of review.* A judge's determination of competency is reviewed under an abuse of discretion standard. See *Commonwealth* v. *Hung Tan Vo*, 427 Mass. 464, 468-469 (1998). An appellate court owes substantial deference to a trial judge's determination that a defendant is competent "because the judge had the opportunity to view the witnesses in open court and to evaluate the defendant personally." *Commonwealth* v. *Prater*, 420 Mass. 569, 574 (1995). The judge is not required to order a screening examination under G. L. c. 123, § 15(*a*), or a further examination under G. L. c. 123, § 15(*b*), each and every time a hearing is conducted with regard to competency. See *Commonwealth* v. *Chubbuck, supra.* See also *Commonwealth* v. *Martin, supra* at 96-97. The judge is entitled to credit the testimony of one expert witness and not another in making her determination. See *Commonwealth* v. *Prater, supra*; *Commonwealth* v. *Brown*, 449 Mass. 747, 761 (2007). The judge is also entitled to place great weight on her own communications with the defendant and observations and reports of his behavior because ultimately competency is based on the defendant's functional abilities. See *Commonwealth* v. *Companonio*, 445 Mass. 39, 48 (2005).

On the record before the trial judge, including her own observations of the defendant, the several prior mental health evaluations, the testimony of the expert witnesses, and the reports of the court officers, she was well within her discretion in determining that it was not necessary to order any further mental health evaluation and that the defendant was competent to stand trial.[5]

2. *The defendant's absence from the court room during his*

_____

[5]That the defendant's behavior may have been exacerbated by the judge's order that he should be handcuffed even while in lockup does not alter this analysis as this decision was both reasonable and lawful. See *infra.*

*trial.* a. *The defendant's right of confrontation.* The defendant's right to confront the witnesses against him is safeguarded by both our State and the Federal Constitutions.[6] "There is no doubt that generally a defendant has the right under art. 12 of the Declaration of Rights to be present during his trial." *Commonwealth* v. *Rios*, 412 Mass. 208, 212 (1992), citing *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 543 (1988). See *Illinois* v. *Allen*, 397 U.S. 337, 343 (1970) (*Allen*) (discussing the Sixth Amendment right to confrontation); *Kentucky* v. *Stincer*, 482 U.S. 730, 745 (1987) (defendant has a due process "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure").[7] "The plain meaning of assuring a defendant the right 'to *meet* the witnesses against him *face to face*' [under art. 12 of the Declaration of Rights] is that the accused shall not be tried without the presence, in a court of law, of both himself and the witnesses testifying against him." *Commonwealth* v. *Bergstrom, supra* at 542. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 632 (1997).

Despite the fundamental nature of the defendant's right to confrontation, it "may be lost by consent or at times even by misconduct." *Allen*, 397 U.S. at 342-343, quoting from *Synder* v. *Massachusetts*, 291 U.S. 97, 106 (1934).[8] In *Allen, supra,* the Supreme Court recognized that the trial judge has several

---

[6]The confrontation clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Sixth Amendment was made applicable to the States through the Fourteenth Amendment to the United States Constitution in *Pointer* v. *Texas*, 380 U.S. 400, 403 (1965). Article 12 of the Massachusetts Declaration of Rights also establishes a right of confrontation, but in terms that are more demanding than those of the Sixth Amendment. Compare *Commonwealth* v. *Amirault*, 424 Mass. 618, 631 (1997) (art. 12 must be interpreted literally to require face-to-face confrontation), with *Maryland* v. *Craig*, 497 U.S. 836 (1990) (face-to-face confrontation of witnesses appearing at trial is not an indispensable part of the Sixth Amendment right).

[7]Massachusetts Rule of Criminal Procedure 18(a), 378 Mass. 887 (1979), secures the defendant's right to be present at all "critical stages of the proceedings." See *Robinson* v. *Commonwealth*, 445 Mass. 280 (2005) (discussing rule and explaining how defendant may waive his right to be present at hearing or trial by his voluntary absence).

[8]The defendant has the right to waive his presence at trial even in a capital case. See *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 269-270 (1995).

alternatives available when a defendant, present for his trial, engages in "[t]he flagrant disregard in the courtroom of elementary standards of conduct." *Ibid.* The trial judge may elect to (1) maintain the defendant's presence in the court room by means of binding and gagging; (2) cite the defendant for contempt; or (3) remove the defendant from the court room until he promises to behave himself. See *id.* at 344-346. Accord *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 751 (1981); *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 307-08 (1975); *Commonwealth* v. *North*, 52 Mass. App. Ct. 603, 616-618 (2001). However, in *Allen, Chubbuck, Senati,* and *North,* the misbehaving defendant or his counsel was expressly warned by the judge in open court that the defendant risked the loss of his right of confrontation if he persisted with his misbehavior. See *Allen,* 397 U.S. at 350 (Brennan, J., concurring) ("Of course, no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior").

b. *The order for restraint.* On October 7, 2009, the judge heard testimony from several court officers about the defendant's recent behavior — his refusal to come into court, his threats, and his conduct in banging on the cell door, as well as his ability to act in a civil manner with other prisoners and his attorney in other circumstances. The judge made additional observations of the defendant by means of the video link. She found that as the witnesses were testifying the defendant had his back to the cell door and was banging on it with his handcuffed hands. She expressed concerns that he was injuring himself. Court officers reported that he had actually damaged the lockup door as a result of his persistent banging against the door. The judge decided that the defendant would remain in handcuffs while in the lockup, and that when the case was called again the following day, the defendant would participate from his cell at the Cambridge jail "[f]or his own safety and for the security of the lockup."

The defendant argues that he should not have been handcuffed and that it was the judge's decision to do so that resulted in his obstreperous behavior. We disagree.

A trial judge has the power and a corresponding responsibility to control the "proceedings, the conduct of participants, the actions of officers of the court and the environment of the court," which is "absolutely necessary for a court to function effectively and do its job of administering justice." *Commonwealth* v. *O'Neil*, 418 Mass. 760, 764 (1994), quoting from *Chief Administrative Justice of the Trial Court* v. *Labor Relations Commn.*, 404 Mass. 53, 57 (1989).[9] Judicial authority in this regard includes the power to take all appropriate measures "to prevent escape, to minimize danger of harm to those attending trial as well as to the general public, and to maintain decent order in the court room." *Commonwealth* v. *Brown*, 364 Mass. 471, 475 (1973). In exercising these powers, the judge may consider her own observations, reports from other judges, and recommendations of court officers and others who may have responsibility for the custody of prisoners and general court security. When it is necessary to employ "unusual security measures . . . the judge must balance the need for special restraints with considerations of maintenance of impartiality and proper decorum" and make appropriate findings. *Commonwealth* v. *Hogan*, 12 Mass. App. Ct. 646, 656 (1981), quoting from *Commonwealth* v. *DeVasto*, 7 Mass. App. Ct. 363, 366 (1979). "The burden is on a defendant to show that the judge's decision in the matter was wrong, and an appellate court, acknowledging that the judge has a range of discretion, will not reverse his decision and vacate a conviction unless he is shown to have been arbitrary or unreasonable." *Commonwealth* v. *Brown*, *supra* at 476. Here, the trial judge acted deliberately and fairly and with due regard for the safety of the defendant as well as court personnel.

c. *The defendant's forfeiture of his right to be present at trial without prior warning.* The defendant maintains that the confrontation clause, as interpreted in *Allen*, requires that the defendant, in all cases, receive a warning from the judge before removal occurs that he will be removed if his misconduct continues. See *Gray* v. *Moore*, 520 F.3d 616 (6th Cir.), cert. denied, 555

[9]See American Bar Association, Standards For Criminal Justice, Special Functions of the Trial Judge § 6-3.5 (a) (3d ed. 2000) ("A trial judge shall require order and decorum in judicial proceedings. The trial judge has the obligation to use his or her judicial power to prevent distractions from and disruptions of the trial").

U.S. 894 (2008).[10] Although the defendant in *Allen* was initially in the court room and was given a warning by the judge before he was removed, the Supreme Court observed that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Allen*, 397 U.S. at 343. It would be inconsistent with the underpinnings of the rule in *Allen* to require a warning and the defendant's presence in the court room before a removal order can issue in circumstances like those in this case where the defendant threatens violence if he is brought into the court room and engages in disruptive behavior to prevent the judge from addressing him.

Here, the trial judge exercised her sound discretion by giving the defendant numerous opportunities to come into the court room, by providing him with access to counsel at all times, and by installing a communications system to enable him to hear the proceedings in the court room. After affording counsel the opportunity to question court officers and offer evidence and argument on the question of forfeiture,[11] the trial judge made adequate findings and rulings that the defendant had forfeited his right to confrontation and would not be brought into the court room during the trial. If, in the alternative, she had ordered the defendant to be brought into court to receive an express warning, the safety of the defendant as well as court staff would have been at risk.

Both the United States Supreme Court and the Supreme Judicial Court have recognized that a defendant may forfeit his right to confront a witness against him "when a judge determines that a wrongful act by the defendant made the witness unavailable to testify at trial." *Giles* v. *California*, 554 U.S. 353, 355 (2008). See *Crawford* v. *Washington*, 541 U.S. 36, 62 (2004); *Commonwealth* v. *Edwards*, 444 Mass. 526, 540 (2005); *Com-*

---

[10]*Gray* v. *Moore, supra,* is distinguishable from this case. There, on habeas review of an Ohio State court conviction, the Court of Appeals for the Sixth Circuit ordered a new trial on one of the defendant's two convictions because the trial judge had ordered the defendant removed from the court room after an outburst without first warning him that removal might result from such behavior. *Id.* at 622. However, the court acknowledged that there may be circumstances in which a trial judge would be warranted in removing a defendant "for extremely unruly behavior" without a prior warning. *Id.* at 624.

[11]It is of no consequence that the trial judge described her ruling as a waiver by the defendant of his right of confrontation as opposed to a forfeiture of the right.

monwealth v. *Szerlong*, 457 Mass. 858, 862-863 (2010), cert. denied, 131 S. Ct. 1494 (2011). Recognition that a defendant may by his purposeful conduct forfeit his right to be present in court during his trial to confront the witnesses against him rests on principles of equity consistent with those underpinning the doctrine of forfeiture by wrongdoing. See Mass. G. Evid. § 804, at 280 (2011). Forfeiture by wrongdoing requires proof that the defendant acted with the intent to procure the witness's un-availability. See *Commonwealth* v. *Szerlong, supra*. Similarly, here the trial judge found that the defendant's conduct was intentional[12] and that it had the effect of preventing her from addressing him or safely bringing him into the court room.

The basis for this result is forfeiture, not waiver, because it does not rest on the relinquishment of a known right, but rather on the defendant's intentional misconduct. See *Commonwealth* v. *Edwards, supra* at 536 n.16. See also *Commonwealth* v. *Means*, 454 Mass. 81, 91 (2009) ("waiver by conduct is misconduct oc-curring *after an express warning has been given . . .*"). Just as the misconduct that is sufficient to trigger the doctrine of for-feiture by wrongdoing does not have to be criminal, forfeiture of the right to confrontation in this context can result from the defendant's obdurate misconduct that puts his safety and the safety of court personnel at risk and prevents the judge from engaging him in meaningful communication.

This result is consistent with *Illinois* v. *Allen*, in which the Supreme Court held that one option available to a trial judge faced with a defendant who engages in flagrantly disruptive behavior in the court room is to remove him and proceed to trial. This result is also consistent with the doctrine of forfeiture of counsel, which recently was addressed by the Supreme Judicial Court in *Commonwealth* v. *Means*, 454 Mass. 81, 92-100 (2009) (*Means*). In *Means*, the court explained that "[f]orfeiture is a method of court room management in extraordinary circum-stances. The sanction of forfeiture recognizes that a defendant

---

[12]It is important to note that as early as September 29, 2009, more than one week before his trial commenced, the defendant was informed of his right to be in the court room during his trial. Despite numerous private consultations with his attorney during the intervening week, he never expressed any interest in being in the court room for his trial.

may engage in misconduct that is so serious that it may justify the loss of his right to counsel even if he was not warned that his misconduct may have that consequence. Mindful that violence by defendants can and does occur in the court room, and taking into account considerations of the fair, efficient, and orderly administration of justice, we are not prepared to deprive judges of what may be a necessary response to exigent circumstances." *Id.* at 92-93.[13] Furthermore, "forfeiture may be an appropriate response to the defendant's threats of violence or acts of violence against defense counsel or others." *Id.* at 94, and cases cited.

In *Means*, the Supreme Judicial Court also prescribed the procedure that the trial judge should follow before invoking the doctrine of forfeiture of counsel.[14] Specifically, the defendant has the right to notice and a hearing on the issue of forfeiture of counsel:

> "[T]he defendant should be represented by counsel; if the conduct at issue is violence or threats directed at his defense counsel, separate counsel may need to be appointed for the limited purpose of representing the defendant at the forfeiture hearing. The judge should hear evidence regarding the alleged conduct that may give rise to the finding of forfeiture. The defendant should have the opportunity to offer evidence, and to cross-examine witnesses, both as to the allegations of his misconduct and the totality of the circumstances that may bear on the forfeiture finding, including his mental competency and psychological condition, any other mitigating considerations, and the willingness of appointed counsel to continue the representation."

*Means, supra* at 97. Following the hearing, *Means* requires the

---

[13]Other courts have employed the same reasoning in concluding a defendant had waived his right to counsel or his right to confrontation. See *Wilson* v. *Harris*, 595 F.2d 101, 103-104 (2d Cir. 1979); Lettley *vs.* Walsh, U.S. Dist. Ct., No. 01-CV-5812 (E.D.N.Y. Dec. 20, 2007); Jones *vs.* Murphy, U.S. Dist. Ct., No. 3:10-CV-49 (D. Conn. Sept. 21, 2010); *People* v. *Staffney*, 187 Mich. App. 660, 665 (1991).

[14]In *Means*, the court also emphasized that "forfeiture is inapplicable where the defendant is determined mentally incompetent to waive the right to counsel and proceed pro se." *Id.* at 95. In the present case, as noted above, the trial judge properly determined that the defendant was competent to stand trial.

judge to determine "whether the defendant's conduct was so egregious as to warrant the sanction of forfeiture, and, if so, in view of the totality of circumstances, whether the sanction of forfeiture is in the interests of justice." *Ibid.* The judge must make factual findings that support a forfeiture of the right to counsel. Although the right to counsel and the right to confrontation serve different purposes, *Means* provides useful guidance in determining whether there has been a forfeiture of the right to confrontation with the exception, for purposes of the analysis in this case, of the defendant's personal participation in the forfeiture hearing. The conduct of the trial judge in this case is consistent with the procedures mandated in *Means* and is warranted on the facts found.

d. *Forfeiture of confrontation rights and Mass.R.Crim.P. 45.* In the circumstances presented here, Mass.R.Crim.P. 45, 378 Mass. 921 (1979), has no application to the defendant's forfeiture of confrontation rights.[15] On October 9, 2009, prior to taking evidence at the trial, the trial judge ruled that rule 45 was not applicable to this case because the defendant did not disrupt proceedings in the court room, but instead did everything he could, including threatening violence, to remain out of the court room. At no time did defendant's trial counsel invoke rule 45 or make any request that the defendant be brought into the court room. In fact, defense counsel, whose focus was on the issue of competency, expressed the view that he preferred that the

---

[15]Rule 45 of the Massachusetts Rules of Criminal Procedure provides, in part, as follows:

"(a) *Removal of Defendant.* Upon the direction of the trial judge, a defendant may be removed from the courtroom during his trial when his conduct has become so disruptive that the trial cannot proceed in an orderly manner. . . .

"(b) *Defendant's Rights After Removal.* A defendant once removed shall be required to be present in the court building while the trial is in progress. At the time of his removal he shall be advised that he has the right to be returned to the courtroom upon his request and assurances of good behavior. Notwithstanding the failure of a defendant to request to be returned to the courtroom, he shall be returned to the courtroom, at appropriate intervals in the absence of the jury, and shall be advised in open court that he will be permitted to remain upon the giving of assurances of good behavior."

defendant be kept out of the court room. Thus, there was no violation of rule 45.

*Conclusion.* The result we reach today is fully consonant with the precept that "[s]ociety may justify a person's conviction only after a trial scrupulous in its adherence to a process which, so far as humanly possible, assures that the innocent are not mistakenly deprived of liberty." *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 553 (1988).

In this case, the able Superior Court judge acted in an exemplary manner by holding hearings at which she considered both prior and contemporaneous mental health evaluations of the defendant by forensic experts along with reports from court officers and counsel, and by making detailed findings on the record that the defendant was competent to stand trial. Even then, despite the defendant's obdurate behavior, she gave him an opportunity to come into the court room and participate fully in his trial. When the defendant persisted in his threat to harm court officers and disrupt the proceedings if required to come into the court room, the trial judge made appropriate findings on the record and arrangements for an audio link between the court room and the defendant's cell and for the presence of a second attorney outside his cell to facilitate communication between the defendant and his trial counsel. Confrontation is unquestionably a fundamental right, but in the circumstances of this case it is unquestionable that it is a right that the defendant forfeited.

*Judgment affirmed.*