### ADOPTION OF WILLIAM.

No. 94-P-1737.

Plymouth. May 11, 1995. - June 23, 1995.

Present: ARMSTRONG, JACOBS, & PORADA, JJ.

*Parent and Child*, Dispensing with parent's consent to adoption. *Due Process of Law*, Assistance of counsel. *Waiver*. *Constitutional Law*, Assistance of counsel, Waiver of constitutional rights.

On the record of a hearing on a petition brought under G. L. c. 210, § 3, to dispense with the need for parental consent to adoption, the father of the child, who was indigent and thus entitled to counsel under that section, made an unequivocal, voluntary, knowing and intelligent waiver of his right to counsel. [662-666]

At a hearing on a petition to dispense with parental consent for adoption of a child, the exclusion of the father, who objected to the petition and appropriately conducted himself while acting as his own attorney, from a brief hearing on the mother's fitness and from an argument on a motion for evaluation of the adoptive parents did not harm his interests and did not violate his due process rights, where the father was present during the receipt of all evidence relating to his fitness and was given a full opportunity to challenge that evidence. [666-667]

PETITION filed in the Plymouth Division of the Probate and Family Court Department on February 27, 1992.

The case was heard by *Anna H. Doherty*, J.

*Ann Wagner* for the father.

*Susan Walewicz* for Department of Social Services.

*Jacqueline L. Freeman* for the minor.

JACOBS, J. William's father[1] appeals on two grounds from a decree entered pursuant to G. L. c. 210, § 3, dispensing with the need for parental consent to a petition for the adop-

---

[1] The record indicates that William's "father" generally was referred to as the "putative father" in the proceedings below, and that he did not file a parental responsibility claim pursuant to G. L. c. 210, § 4A. For ease of reference, however, we refer to him as the father.

tion of William.[2] He claims that his waiver of his right to
counsel was invalid and his exclusion, by a Probate Court
judge, from a portion of the trial violated his constitutional
right to due process of law. We reject these claims and affirm
the decree.

1. *Waiver.* The petition underlying this appeal was filed by
the Department of Social Services (DSS) in February, 1992.
After being served with notice of the proceeding, the father,
in May, 1992, filed a motion objecting to the petition and
asking for the appointment of counsel. At approximately the
same time, he wrote to a DSS social worker asking that cer-
tain of his relatives be considered as adoptive parents and
requesting the appointment of a lawyer "so I can make sure
my child is in good hands." An attorney was appointed for
the father on October 27, 1992.

On the day scheduled for trial, January 27, 1994, during
hearings on pretrial motions, the father's attorney indicated
to the court that the father wished to represent himself.
Shortly thereafter, the father was asked his reasons for want-
ing to dismiss his attorney and represent himself. During that
inquiry, the transcript of which is set forth in the appendix,
the judge informed the father of his right to counsel, the pos-
sible outcome of the case and the "complicated" nature of
the issues involved. The judge then explained that she was
appointing the father's attorney to act as "stand-by counsel,
to be available to you for consultation should you ask for it."
The judge then asked the father to execute a waiver explain-
ing that his signing indicates "that you have been informed
of your rights to counsel and to have counsel appointed for
you at every stage of this proceeding; and you elect to pro-

---

[2]William was born on September 13, 1991, with a positive drug screen
for cocaine. The father was incarcerated at the Plymouth house of correc-
tion on the day of William's birth, and was a prisoner at the Massachu-
setts Correctional Institution at Gardner at the time he objected to the
petition, and as of the time of trial in January, 1994, he had never seen
William. He anticipates being eligible for parole in 1998. The mother
neither appeared in response to the petition nor participated in the trial.
No appeal has been filed in her behalf. She has had no contact with Wil-
liam since he was placed in foster care on September 26, 1991, and has
been of parts unknown for several years.

ceed without counsel and waive your right to that appointment." At that point, the father signed the waiver form.

From 1980 through 1991, the father had been arraigned in various District and Superior Courts on twenty-three occasions in cases involving a wide variety of criminal charges. The dispositions in nine of those cases involved prison sentences. At the time of trial, he was serving concurrent Massachusetts and Federal sentences. In an affidavit of indigency filed with the court, the father stated that the highest grade he attained in school was the eleventh. At trial, he testified to currently taking "pre-college courses."

An indigent parent in a G. L. c. 210, § 3, proceeding has a constitutional right to counsel. *Department of Pub. Welfare v. J.K.B.*, 379 Mass. 1, 2-5 (1979).[3] Probate Court Uniform Practice Xa. 7 (1989). No cases have been brought to our attention explicating the criteria for determining the validity of the waiver of that right. Given that the severance of a parent's relationship with his or her child may be as severe a deprivation to that parent as the loss of personal freedom, see *Custody of a Minor (No. 1)*, 377 Mass. 876, 884 (1979), it is appropriate that we look to the criminal law to determine the validity of a purported waiver of counsel in a proceeding which operates to terminate parental rights. Similar resort to criminal cases has been made with respect to analysis of claims of ineffective assistance of counsel in custody and termination proceedings. See *Care & Protection of Stephen*, 401 Mass. 144, 149 (1987); *Adoption of Mary*, 414 Mass. 705, 712-713 (1993). That analogous authority leads us to the conclusion that a waiver of counsel in a G. L. c. 210, § 3, proceeding must be voluntary, unequivocal, knowing and in-

---

[3] In this decision, the Supreme Judicial Court concluded that both the State and Federal Constitutions require the appointment of counsel for an indigent parent in a G. L. c. 210, § 3, proceeding, citing the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights. *Id.* at 3. The United States Supreme Court subsequently held that the due process clause of the Fourteenth Amendment does not mandate appointment of counsel in every proceeding involving termination of parental rights and left it to State courts to determine in the first instance whether due process calls for such appointment. See *Lassiter* v. *Department of Social Servs.*, 452 U.S. 18, 31-32 (1981).

telligent and causes us to seek guidance for the interpretation of that standard in relevant criminal proceedings in which a defendant's waiver of counsel is in issue. See *Faretta* v. *California*, 422 U.S. 806 (1975); *Commonwealth* v. *Barnes*, 399 Mass. 385, 390 (1987); *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47, 51 (1974); *Commonwealth* v. *Stovall*, 22 Mass. App. Ct. 737, 739 (1986).

A party challenging the effectiveness of his relinquishment of the right to counsel has the burden of proving by a preponderance of the evidence that his waiver was not valid. *Commonwealth* v. *Lee*, 394 Mass. 209, 218 (1985). *Commonwealth* v. *Higgins*, 23 Mass. App. Ct. 552, 556 (1987). There is no " 'particular piece of information that is essential to an effective waiver of counsel.' *Maynard* v. *Meachum*, 545 F.2d 273, 279 (1st Cir. 1976). The validity of a defendant's waiver depends on the particular facts and circumstances of each case. *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938)." *Commonwealth* v. *Barnes, supra* at 390-391. *Commonwealth* v. *Moran*, 17 Mass. App. Ct. 200, 208 (1983). A determination that a party validly has waived his right to counsel "turns not simply on the state of the record, but on all of the circumstances of the case." *Maynard* v. *Meachum, supra* at 278.

No issue is presented, nor is it argued, that the father's waiver of counsel was involuntary. While his initial decision to represent himself may have been stimulated by his desire to address the court, he maintained that position after the judge explained that he would have the opportunity to testify under examination by his attorney. His decision, therefore, hardly was driven by the "Hobson's choice" of not being able to address the court except by representing himself. Compare *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 53-54 (1976). There is no claim by the father nor any indication in the record that he believed his appointed attorney was either incompetent or unprepared or that he sought substitute counsel. He clearly articulated a desire to "handle this situation" himself. His decision was unequivocal and voluntary.

We focus our review, therefore, on the father's "subjective understanding of his decision and its consequences. . . . We must be confident that [he] was 'adequately aware of the seriousness of the [proceedings], the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation.' *Commonwealth* v. *Jackson*, 376 Mass. 790, 795 (1978)." *Commonwealth* v. *Barnes*, *supra* at 391. Material to this analysis is both the trial record and the father's background and experience including "such factors as his involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial in determining whether he understood what he was getting into." *Commonwealth* v. *Barnes*, *ibid.*, quoting from *Maynard* v. *Meachum*, *supra* at 279.

Viewing the father's waiver in the context of the entire proceeding, we are convinced that he acted knowingly and intelligently. The judge, without the benefit of prescribed questions, see *Commonwealth* v. *Barnes*, *supra* at 390, sufficiently explored the father's reasons for wanting to represent himself and adequately explained the "pitfalls in proceeding pro se." *Commonwealth* v. *Mott*, *supra* at 52. His attempt to suggest certain of his relatives as prospective adoptive parents and his presence during a hearing of a pretrial motion to dismiss during which his standing to object to the adoption of William was thoroughly argued, coupled with the judge's warning to him that the petition, if allowed, "will cut off your rights concerning the adoption of this child," emphatically indicate that the father was aware of the seriousness and consequences of the proceeding. Not only was the father apprised of the existence of complicated issues with respect to which he might need to consult counsel, the record indicates that at one point he expressed his discomfort in speaking to a guardian ad litem for the child before he had an opportunity to discuss the case with his attorney. These factors are reflective of the father's awareness of the magnitude and disadvantages of self-representation. The judge's several expressions of concern over the father representing himself and her appointment of standby counsel could not fail to im-

press him with the importance of his undertaking. See *Commonwealth* v. *Lee*, 394 Mass. at 218-219. Moreover, the father's frequent involvement with the criminal justice system was likely to make him sensitive to the important role counsel plays in court proceedings having serious consequences. The father's educational level and his various statements and writings in the record convince us that he had the capacity to make an intelligent waiver.[4] See *Maynard* v. *Meachum*, *supra* at 279 ("[a]n intelligent waiver does not require that the accused have the skill or knowledge of a lawyer").

2. *Exclusion from proceedings*. In addition to the father, three witnesses testified at the trial. The father was present and actively participated in the proceedings during all of the testimony of two of those witnesses. He was also present during most of the testimony of a third witness, a DSS social worker, and engaged in cross-examination of that witness. After the judge declared the hearing closed as it pertained to the father and excluded him from the courtroom, the DSS social worker was permitted to resume the stand and gave testimony relating solely to the mother's fitness and covering less than five pages of transcript. Upon completion of testimony, the judge heard argument on the motion of William's attorney for an independent clinical evaluation of the prospective adoptive parents. No witnesses were presented during this hearing, which covered approximately eleven pages of transcript, and the argument of counsel was focused on testimony which had been given while the father was in the courtroom. The judge denied the motion.

Since the DSS petition sought to dispense with the consent of *both* parents, the father, who objected to the petition and conducted himself appropriately while acting as his own attorney, had a right to be present throughout the trial.[5] Nevertheless, his exclusion during the brief examination of the

---

[4]The father unconvincingly argues that his conduct of the trial demonstrates his inadequate understanding of the proceeding. The trial record provides little support for this claim.

[5]During the pretrial hearing of motions and prior to the dismissal of his attorney, the father was ordered out of the courtroom for disruptive conduct. He does not contest that order on appeal.

social worker and the argument of the motion for an independent evaluation, in the circumstances, does not have due process significance. See *Commonwealth* v. *Burbank*, 27 Mass. App. Ct. 97, 105-106 (1989). Contrast *Commonwealth* v. *Mott, supra* at 52. The father was present during the receipt of all evidence relating to his fitness and the best interests of William, including the suitability of the DSS adoption plan, and was given full opportunity to challenge that evidence. His inability to hear or challenge the brief testimony that overwhelmingly established the mother's unfitness did not harm his interests. With respect to the motion for an independent evaluation filed in William's behalf, it is significant that the judge, during a pretrial conference, agreed to the suggestion by William's attorney, that it be heard after the completion of the G. L. c. 210, § 3, evidence. The father's attorney who was present and had participated in the pretrial proceedings did not object to that scheduling of the motion. Thus relegated to a segment of the process following the close of evidence, the hearing on the motion for an independent evaluation had no direct bearing on the G. L. c. 210, § 3, determination, and even had the motion been allowed, the evaluation would pertain principally to the prospective adoption, which is a separate and independent proceeding. *Petition of New England Home for Little Wanderers*, 367 Mass. 631, 635 n.3 (1975). *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 371 Mass. 651, 656 n.6 (1976). See G. L. c. 210, § 5A. In any event, the record indicates that the DSS adoption plan was entered as an exhibit at the trial, fully considered by the judge in accordance with G. L. c. 210, § 3(*c*), and found by her to serve William's best interests. Compare *Petition of Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 6 Mass. App. Ct. 477, 479-480 (1978).

*Decree affirmed.*

APPENDIX.

THE JUDGE: "Now, why are you asking to remove attorney Milne?"

THE FATHER: "Because I want to say what I have to say, ma'am, and I see that this is the only way I can do it."

THE JUDGE: "Do you understand, Mr._____, that you certainly have the opportunity to take the stand, to be examined by your attorney and cross examined by other attorneys?

You have the right to counsel in this matter. You have the constitutional right to be represented by counsel at every stage of this particular proceeding, which will cut off — If it's allowed, it will cut off your rights concerning the adoption of this child."

"So you constitutionally have the right to counsel."

THE FATHER: "Uh huh."

THE JUDGE: "Now, if you're asking to continue without counsel, I'd like to know first of all why."

THE FATHER: "Because I would like to handle this situation myself."

THE JUDGE: "You want to represent yourself?"

THE FATHER: "Yes, ma'am, I would."

THE JUDGE: "I'm concerned, sir, that you will require the chance to consult counsel as the proceedings go by. There are a number of rather complicated, especially eviden[t]iary, issues involved in this situation and you may need to consult counsel.

I am willing to allow you certainly to represent yourself in the matter, but I will be asking that attorney Milne remain in the case as stand-by counsel, to be available to you for consultation should you ask for it."

THE FATHER: "Yes, ma'am."

THE JUDGE: "All right. Now, if you wish to represent yourself, you must execute this waiver which says that you have been informed of your rights to counsel and to have counsel appointed for you at every stage of this proceeding; and you elect to proceed without counsel and waive your right to that appointment."

"And if you wish to execute that waiver, and file it with the Court and also file an appearance, I will allow you to represent yourself in the hearing. But I'm going to require attorney Milne to stand by as stand-by counsel."