ADOPTION OF GABRIELLE.

No. 95-P-440.

Suffolk. September 21, 1995. - December 4, 1995.

Present: DREBEN, GREENBERG, & LENK, JJ.

*Adoption*, Dispensing with parent's consent. *Parent and Child*, Adoption. *Minor*, Adoption. *Practice, Civil*, Assistance of counsel, Disqualification of judge, Findings by judge. *Judge.*

In a proceeding to dispense with parental consent to adoption the judge's conclusion that the mother was currently unfit was supported by the judge's findings which were substantiated by the record. [485-486]

In a proceeding to dispense with parental consent to adoption, the fact that the judge had been involved in some of the matters involving the mother's own care and protection proceeding provided no ground for the judge to have recused herself and there was no ineffective assistance of counsel in counsel's failing to seek the judge's disqualification. [486-487]

An adoption proceeding was remanded to the Juvenile Court for further consideration of and findings with respect to the adoption plan proposed by the Department of Social Services. [487-489]

PETITION filed in the Boston Division of the Juvenile Court Department on June 29, 1993.

The case was heard by *June C. Miles*, J.

*Lois J. Martin* for the mother.

*Richard A. Salcedo* for Department of Social Services.

*Kevin D. Ainsworth* for the minor.

DREBEN, J. The mother appeals from a judgment determining that she is unfit to parent her child and dispensing with the need for her consent to any petition for adoption. She claims that the judge's findings do not meet the requirements of *Santosky* v. *Kramer*, 455 U.S. 745 (1982), that she was denied effective assistance of counsel, that the judge should have recused herself, and that the Department of Social Services (department) did not follow its own regulations

in placing the child. We affirm the findings of parental unfitness, consider the claims of recusal and ineffective assistance of counsel to be without merit, but conclude, in view of the supportive family of the mother and their desire to adopt the child, that additional findings are required. We therefore remand the case for further findings and conclusions.

1. *Unfitness of mother.* Despite evidence that the mother has made efforts to enable her to take care of the child, the judge's finding, using the standard of clear and convincing evidence, that the mother is currently unfit is substantiated in the record. The mother was born on February 8, 1976, and her daughter was born on June 26, 1993, when the mother was seventeen. Prior to the birth of the child, the mother, who was refusing to eat, was committed for a ten-day evaluation at McLean Hospital based on medical testimony that she was a danger to those around her, including her fetus.[1] At McLean she was diagnosed as having psychotic depression. She was subsequently transferred to Somerville Hospital so that she could obtain prenatal care. The discharge summary of Somerville Hospital referred to her "seriously aggressive behavior." Her diagnosis included "oppositional defiant disorder." The day after the child was born, the mother was transferred to Westborough State Hospital, and on the same day, June 29, 1993, the department filed a petition alleging the child was in need of care and protection. The department was given temporary legal and physical custody, and the child was placed in foster care.

On September 9, 1993, the mother was admitted to the Charles River Adolescent Day Treatment Program. Among the primary treatment goals was the management of her anger. On November 24, 1993, the mother, who did not wish to continue, was discharged from the program due to her nonattendance.

The medical records and the report by the treating psychiatrist at the University of Massachusetts Adolescent Treatment Program at Westborough State Hospital document the

---

[1] The judge who heard the present case was also the committing judge.

mother's mental problems which led the judge to conclude that the mother's "mental deficiency" makes her "unlikely to provide minimally acceptable care of" the child. The records show repeated assaultive or "oppositional" behavior, a refusal to understand unpleasant or disappointing communications, an unwillingness to take responsibility for her actions, and an insistence on blaming others for the negative events that befell her. While there is no doubt that the mother would like to care for her child, the evidence bears out that she has difficulty in controlling her behavior and in following through with offered services or in achieving her own goals. The judge's subsidiary findings setting forth the emotional problems of the mother are not clearly erroneous[2] and support the conclusion of unfitness of the mother to care for this child, who has special needs.

2. *Recusal and ineffective assistance of counsel.* The trial judge had been involved in some of the matters involving the mother's own care and protection case. Based on this fact, the mother urges that the judge should have recused herself and that counsel was ineffective in not requesting such recusal. The arguments are without merit. Even knowledge of damaging information against a party does not disqualify a judge from continuing to sit on a case. Thus, the fact that a judge presided in a previous criminal trial involving the same defendant is generally not a ground for disqualification. *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. 571, 587 (1977). *Commonwealth* v. *Dane Entertainment Servs., Inc.,* 18 Mass. App. Ct. 446, 449 (1984). " 'The alleged bias and prejudice to be disqualifying must rise from an extrajudicial source and not from something learned from participation in the case' or from a hearing in a related proceeding." *Howe* v. *Prokop*, 21 Mass. App. Ct. 919, 919-920 (1985).

The record does not suggest unfairness to the mother; to the contrary, it is apparent from the transcript that the judge

---

[2]That the judge did not refer to the problems of visitation while the mother was in the Job Corps in Springfield or to the absence of medical insurance to provide counselling are matters insufficient to derogate from the findings as a whole.

deliberately retained the child's case in an effort to provide as much support for the mother as possible. Trial counsel, no doubt, also recognized the judge's concern for the mother and probably did not want another judge. In any event, it is clear that a motion for recusal would not have prevailed. The judge's concern for the mother makes it obvious that she would not have exercised the discretionary act of disqualifying herself. There was no ineffective assistance of counsel in failing to seek disqualification.[3]

3. *Remand for further proceedings.* The record shows that the mother has a very supportive family. Both the mother's aunt and her maternal grandmother wished to adopt the child. The grandmother, aged sixty-one, who lives in an apartment in the same house as the aunt, is already taking care of another grandchild's three year old child. The aunt was approved by the department as a placement for the child, but final approval could not be given because there was lead paint in her apartment.[4]

Although the judge in her findings states that she considered the department's adoption plan, she included no discussion of the plan in her memorandum. The transcript also sheds no light on the plan. Indeed, at the time of the hearing, the judge explicitly stated that she had not reviewed the plan.

Although adoption is a separate proceeding, see *Adoption of William*, 38 Mass. App. Ct. 661, 667 (1995), the statute,

---

[3]The mother also claims ineffective assistance of counsel in not making more objections, in not presenting additional favorable evidence, and in not ensuring that all sidebar conferences were recorded. The claims do not support the conclusion that counsel's conduct, even if it fell measurably below that which might be expected from an ordinary fallible lawyer (and we in no way suggest that such is the case), has likely deprived the defendant of an otherwise available, substantial ground of defense. See *Adoption of Mary*, 414 Mass. 705, 712 (1993). Moreover, such claims should more appropriately have been raised by a motion for a new trial. *Id.* at 713.

[4]The department also mentioned that there had been a physical altercation between the aunt and the mother. In view of the approval, however, this appears not to have been of consequence. The reason the department did not allow the child to live with the aunt was the presence of lead paint in the apartment.

G. L. 210, § 3(*c*), as appearing in St. 1972, c. 800, § 2, requires the judge to "consider" the plan proposed by the department. "Although the department is not required to identify prospective adoptive parents in this plan, it must provide sufficiently specific and detailed information . . . so that the judge may properly evaluate the suitability of the department's proposal." *Care & Protection of Three Minors*, 392 Mass. 704, 717 (1984).

In the absence of findings by the judge we are unable to determine whether the department's plan not to allow the mother's family to have the child was too hastily conceived and taken without consideration of ways to ameliorate the lead paint situation. See, e.g., G. L. c. 111, § 197, concerning duties of a property owner with respect to lead paint, and § 197E, regarding State loan assistance for removal of lead paint. The grandmother is, as indicated, already taking care of a child under six so presumably her apartment meets the requisite lead paint standards.[5]

In view of the statutory and regulatory enjoinders to encourage family unity, see G. L. c. 119, § 1,[6] and 110 Code Mass. Regs. § 1.01 (1986),[7] and in view of the supportive

---

[5]The record does not indicate whether the property is owned by the grandmother, the aunt, or a third person.

[6]The policy of c. 119 as stated in § 1 (as appearing in St. 1954, c. 646, § 1), is as follows:

"It is hereby declared to be the policy of this commonwealth to direct its efforts, first, to the strengthening and encouragement of family life for the protection and care of children; to assist and encourage the use by any family of all available resources to this end; and to provide substitute care of children only when the family itself or the resources available to the family are unable to provide the necessary care and protection to insure the rights of any child to sound health and normal physical, mental, spiritual and moral development."

[7]Section 1.01 of 110 Code Mass. Regs. (1986) reiterates that purpose:

"The policy of the Commonwealth of Massachusetts and therefore of the Department of Social Services is to strengthen and encourage family life so that every family can care for and protect its children. To that end, the Department will make every reasonable effort to encourage and assist families to use all available resources to maintain the family unit intact . . . ."

nature of this mother's family, the judge in this case should either make findings showing that the department sufficiently sought to assist and encourage the use of all available resources to strengthen the family, or explain why such efforts were unnecessary. See *Care & Protection of Three Minors*, 392 Mass. at 717-718.[8]

The case is remanded to the Juvenile Court for further proceedings in accordance with this opinion.

*So ordered.*

---

(The current regulation, 110 Code Mass. Regs. § 1.01 [1993], is identical.)

See also 110 Code Mass. Regs. § 7.101(l)(h) (1990). (The current regulation, 110 Code Mass. Regs. § 7.101[l][h] [1993], contains the same provision.)

[8]After citing articles pointing to the minimal role of the courts and criticizing the "blind deference to professionals," the Supreme Judicial Court in *Care & Protection of Three Minors*, 392 Mass. at 718, noted: "When the department is granted *permanent* custody of a child, it has virtually free rein to place that child in a foster home of its choosing, to decree whether, how much, and what sort of family visitation there should be, and to decide whether to have the child adopted. This discretion is subject only to a petition for review which cannot be filed more than once every six months." (Emphasis original.)

When, as here, the care and protection proceedings are combined with a petition to dispense with the parent's consent to adoption, there is even less occasion for periodic review. The petition to dispense with consent to adoption determines whether "it would be in the best interests of the child for all legal relations [with the parent] to be ended" (emphasis omitted). *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738, 741 (1984). If allowed, the parent "no longer has the power to prevent the termination of [her] rights . . . ." *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984). *Adoption of Reid*, ante 338, 342 (1995). Since all legal relations are to be ended, see *Custody of a Minor (No. 1)*, 391 Mass. 572, 576-577 (1984), a parent has no right to further review under G. L. c. 119, § 26. In cases where the petitions are combined and there is no further review under G. L. c. 119, § 26, there is thus more urgent reason for a careful consideration of the department's plan. See Uniform Probate Court Practice Xa, §§ 14-16 (1989), establishing a judicial tracking system for adoptions in the Probate Court. See also *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 6 Mass. App. Ct. 477, 479 (1978).