NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-933

ADOPTION OF BRIANNA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Juvenile Court, a judge found both the mother and the father unfit to parent Brianna, terminated their respective parental rights, and approved the plan of the Department of Children and Families (department).  On appeal, the mother contends that (1) she was denied due process when she was required to proceed to trial with standby counsel; (2) the finding of her unfitness was not supported by clear and convincing evidence; and (3) termination of her parental rights was not in the child's best interests.  The father contends that (1) the judge violated his right to due process by relying upon documents not in evidence; (2) the department failed to make reasonable efforts to reunify him with Brianna; (3) the judge abused her discretion by selecting the department's permanency plan over his; and (4) the judge erred in declining to order

---

[1] A pseudonym.

posttermination visitation.  We reverse in part and affirm in part.

Background.  Brianna was born in March 2014.  The department filed a care and protection petition on behalf of Brianna on June 8, 2017, based on concerns of neglect, the mother's mental health, and Brianna's exposure to domestic violence.[2]  At the June 8 hearing, the judge determined that the mother was indigent and appointed counsel to represent her.[3]  One year later, in June 2018, counsel withdrew for personal reasons and the judge appointed successor counsel.  Over two years thereafter, in August 2020, the second attorney filed a motion to withdraw at the mother's request.  In September 2020, when questioned by the judge at a hearing conducted via an Internet-based video conferencing platform, Zoom Video Communications, Inc. (Zoom), the mother indicated that she had issues with the second attorney's availability and requested the first attorney be reappointed.  The judge allowed the second attorney's motion to withdraw and appointed a third attorney.  Almost immediately, the mother expressed concern with the third attorney because she recognized him from the court house and did not "like" him.  The judge advised the mother that she did not "get to pick" her

_____

[2] This was the third care and protection petition filed by the department involving Brianna since 2014.
[3] The father was not present at that hearing.

2

appointed counsel and warned that "if you keep firing your attorneys, you don't get another one and then you'll be forced to represent yourself."

Six months later, during a Zoom hearing in March 2021, the mother again requested new counsel.[4]  She stated that the third attorney did not "have the time of day for [her]."  Before acting on the motion, the judge told the mother that she could either continue with the third attorney or proceed pro se.  When the mother responded, "for shoots and giggles, I can go pro se," the judge advised, "I would truly recommend you not do that because I'm about to set this case for trial."  The mother then stated, "I'm willing with the pro se for shits and giggles."  The judge admonished her for "cursing" and again gave her "a choice to keep [the third attorney]."  The mother, despite continuing to complain about his performance, replied "I'm going to keep [the attorney]."  However, the judge then indicated she would "split the difference" and modified the attorney's role to standby counsel.  The mother agreed to maintain the attorney "on the sidebar," but also stated she wanted to hire another lawyer.  After a brief back and forth between the judge, the attorney, and the mother regarding scheduling the trial and the role of

---

[4] At a hearing in October 2020, the third attorney told the trial judge he had a "stormy relationship" with the mother and questioned her "mental status."

standby counsel,[5] the mother reiterated, "I want a new attorney. You guys are giving me a short end of the stick.  Like, I'm not blind."

The matter was tried over four nonconsecutive days in August and September 2021.[6]  The mother, who was not present for the first day of trial, proceeded with the third attorney acting as standby counsel.[7]  The father and child were represented by counsel.  The evidence consisted of the testimony of two social workers, the mother, the paternal aunt, and an expert in permanency planning, as well as seventy exhibits offered by the department.  After the trial concluded, the judge issued a series of decisions and orders determining that both parents were unfit and terminating their parental rights.[8]  See G. L. c. 119, § 26; G. L. c. 210, § 3.

Discussion.  1.  <u>Waiver of right to counsel</u>.  "An indigent parent in a G. L. c. 210, § 3, proceeding has a constitutional right to counsel. . . .  Because the loss of a child may be as onerous a penalty as the deprivation of the parents'

---

[5] During the exchange and at other times during the hearing, the mother frequently interrupted the judge and veered off topic.
[6] The first trial had resulted in a mistrial in January 2020.
[7] As standby counsel, the attorney requested a continuance on the first day when the mother failed to appear, cross-examined the mother, and assisted with the cross-examination of two other witnesses.  He also filed a motion to file a late appeal, filed a notice of appeal, and filed motions for funds and appointment of appellate counsel.
[8] At the time of trial Brianna was seven years old.

4

freedom, . . . courts have looked to the criminal law in deciding issues of individual rights in care and protection cases, including the right to counsel" (quotations omitted). Adoption of Raissa, 93 Mass. App. Ct. 447, 451-452 (2018). A waiver of counsel must be "voluntary, unequivocal, knowing, and intelligent." Adoption of William, 38 Mass. App. Ct. 661, 663-664 (1995). However, as in a criminal proceeding, the right to counsel may be waived either explicitly or through conduct. See id. at 664-665; Commonwealth v. Means, 454 Mass. 81, 89-91 (2009). We review claims of violations of the right to counsel de novo. See Means, supra at 88.

We agree with the mother that her waiver of counsel was not voluntary, unequivocal, knowing, or intelligent, and that the judge erroneously accepted her waiver without conducting an adequate colloquy.[9] See Adoption of William, 38 Mass. App. Ct. at 665. It is evident from the record that the mother's demeanor and frequent interruptions of the judge, compounded by issues with the Zoom connection, created a difficult dynamic. Still, it was the judge's obligation to ensure that "[the

---

[9] Because we conclude that the mother's waiver was not voluntary, unequivocal, knowing, and intelligent we need not reach her argument that she was deprived of due process based on the judge's failure to comply with S.J.C. Rule 3:10 (3), as appearing in 475 Mass. 1301 (2016), which includes requirements of a written waiver, certification by the judge, and written findings following a colloquy. We also need not reach her challenges to the unfitness and best interests determinations.

mother] was adequately aware of the seriousness of the [proceedings], the magnitude of [her] undertaking, the availability of advisory counsel, and the disadvantages of self-representation" (quotation and citation omitted). Id. The judge did not probe the mother's reasons for wishing to represent herself, inquire into her educational background, or address concerns regarding her mental health to establish that her waiver was knowing and intelligent. See id.; Commonwealth v. Haltiwanger, 99 Mass. App. Ct. 543, 555 (2021). During her interaction with the mother, the judge provided a cursory explanation that as a pro se litigant the mother would be responsible for defending the case and filing motions and that standby counsel would not file motions or contact people on her behalf. The mother never explicitly stated she understood that proceeding pro se meant she would have to defend the case herself. Her statement that she would represent herself "for shits and giggles" hardly reflected a sense of the seriousness of the proceedings or the magnitude of a decision to self-represent. Nor did the mother unequivocally state that she wanted to represent herself. In fact, the opposite occurred -- the mother stated she wanted to "keep" the third attorney immediately before the judge told her he would be standby counsel. The mother then indicated she "wante[ed] to bring an attorney to the table" by hiring private counsel and reiterated

6

that "I need a new attorney" and "I don't need him at the sidebar" before the judge told her, "you're not getting a new attorney." The hearing ended moments later with the mother telling the judge, "I can't even get a fair trial." Based on all of these circumstances, the mother has demonstrated by a preponderance of the evidence that her waiver was not voluntary, unequivocal, knowing, or intelligent. See Adoption of William, supra at 664-665.

We are also persuaded that the mother did not forfeit her right to counsel by her conduct. "Waiver by conduct may occur where a parent engages in misconduct after having been warned by the judge that such behavior will result in the loss of the right to counsel." Adoption of Raissa, 93 Mass. App. Ct. at 452. The department argues that the mother's refusal to work with court-appointed counsel was without good cause and thus constituted waiver. Yet, while the mother expressed reservations about her second and third attorneys, she evidently was able to work well with her first appointed attorney for one year until that attorney withdrew for personal reasons unrelated to the mother. The mother's two requests for different counsel were based on her belief that the second and third lawyers were unavailable and thus could not properly assist her. This was a far cry from the circumstances in Adoption of Raissa, where that mother "either fired or failed to communicate with each of the

7

eight attorneys appointed to her, which resulted in their need to withdraw." Id. Furthermore, notwithstanding the mother's request for different counsel, she agreed to work with the third attorney despite her reservations about him. The judge nevertheless modified that attorney's role to standby counsel. We do not view the mother's disinclination to work with the second and third attorneys in the circumstances of this case as "engag[ing] in misconduct after having been warned by the judge that such behavior will result in the loss of the right to counsel." Id.

Although the mother had the assistance of standby counsel, that is not the equivalent of full representation at trial. "Standby counsel is available only to assist the [party] to the extent, and in the manner, the [party] wishes to call upon such counsel while representing [themselves]. Standby counsel does not formally represent the [party]. Nor does standby counsel protect the [party]'s interests in the same way or to the same extent as counsel." Commonwealth v. Leonardi, 76 Mass. App. Ct. 271, 275-276 (2010). Because the mother was deprived of the right to an attorney, the decree is void. See Adoption of Rory, 80 Mass. App. Ct. 454, 458 (2011).

2. Father's claims. a. Documents. The father contends the judge erroneously relied on six documents not in evidence in

8

making certain findings of fact.[10]  Although we agree the judge referred to excluded documents in her findings of fact, we are satisfied that there was ample admissible evidence of the father's unfitness.  The judge's findings were supported by properly admitted testimony and exhibits showing that the father continued to engage in criminal activity while the department's review was ongoing; consistently failed to make progress with the department's action plan for him; first contacted the department eight months after the care and protection case was filed; was frequently incarcerated and had inconsistent visitation with Brianna, thus disrupting his ability to form a bond with her; did not communicate with the department despite the department's attempts to reach him; and had supervised visits with Brianna only six times in four years.  Therefore, even assuming error in the judge's consideration of documents not properly before her, we discern no prejudice to the father.  Compare Care & Protection of Zita, 455 Mass. 272, 284 (2009).

b.  Reasonable efforts.  The father also asserts that the department failed to make reasonable efforts to reunify him with Brianna.  "Before seeking to terminate parental rights, the department must make 'reasonable efforts' aimed at restoring the

_____

[10] Specifically, the father argues the judge improperly relied upon two psychological evaluations, a court activity record, a court-appointed special advocate report, a care and protection evaluation, and a police file.

9

child to the care of the natural parents." Adoption of Ilona, 459 Mass. 53, 60 (2011), quoting Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). The judge, when terminating parental rights, is required to determine whether the department made reasonable efforts to "prevent or eliminate the need for removal from the home," and we defer to the judge's findings unless clearly erroneous. Adoption of Ilona, supra at 61-62, quoting G. L. c. 119, § 29C.

Here, the judge determined that the department made reasonable efforts to reunify the father and child, but the father was "unable to maintain long term stability and address his repeated incarcerations, drug involvement, and lack of consistent communication." The judge stated that the "Father did not contact the Department until February 2018, eight months after this care and protection was filed. Father has not communicated with the Department or had a visit with [Brianna] in over a year. Father has provided no proof of engagement in services, nor has he taken steps necessary for stability in the home, having been homeless, unemployed, and incarcerated multiple times during this care and protection proceeding."

The father argues that the department failed to locate him and coordinate visits with the child while he was incarcerated. Contrary to this argument, however, the record indicates the department arranged a visit with the father while he was

10

incarcerated. The record also supports the judge's finding that the father failed to respond to the department's attempts to contact him. Although the social worker testified that she did not check police reports and the father's CORI, or conduct a family search to locate the father when his whereabouts became unknown, the father did not attend scheduled meetings and consistently failed to engage with the department. Based on the evidence of inconsistent communication with the department, the judge's finding of reasonable efforts was not clearly erroneous. See Adoption of Ilona, 459 Mass. at 62.

c. Permanency plan. The father claims the judge improperly weighed the evidence of his competing permanency plan -- placement with his sister. "In cases where the parents have offered a competing plan, the judge must assess the alternatives and, if both pass muster, choose which plan is in the child's best interests, however difficult that choice may be." Adoption of Dora, 52 Mass. App. Ct. 472, 475 (2001). We review the decision for abuse of discretion or error of law. See Adoption of Hugo, 428 Mass. 219, 225 (1998), cert denied sub nom, Hugo P. v. George P., 526 U.S. 1034 (1999).

The department's permanency plan for Brianna was adoption by her current foster mother. The father offered an alternative plan, placement with his sister, Brianna's paternal aunt. In rejecting placement with the aunt, the judge found that the aunt

11

(1) delayed three years in approaching the department for custody despite knowing that Brianna was in foster care; (2) did not have a preexisting relationship with the child; (3) failed to provide the department with the requested documentation to complete the "caretaker/custody application"; (4) permitted the father to have unauthorized contact with Brianna during a visit; and (5) "demonstrated a repeated pattern of delay in establishing her relationship with [Brianna] and taking the necessary steps to obtain custody."  We discern no error.  See Adoption of Jacob, 99 Mass. App. Ct. 258, 272 (2021) (no abuse of discretion where judge concluded placement with grandparents did not advance child's best interests).

d.  Visitation.  Finally, the father contends the judge abused her discretion in declining to order posttermination and postadoption visitation.  "A judge may order that no postadoption [and posttermination] visitation take place. . . . An order for . . . visitation is not warranted in the absence of a finding that a significant bond exists between the child and a biological parent and 'that continued contact is currently in the best interests of the child.'"  Adoption of John, 53 Mass. App. Ct. 431, 439 (2001), quoting Adoption of Vito, 431 Mass. 550, 563-564 (2000).  The decision whether to grant visitation is "left to the sound discretion of the trial judge."  Adoption of John, supra.

12

Here, the judge declined to order posttermination or postadoption visitation between the father and the child, and left the issue of such visitation to the discretion of the department or adoptive parents, because visitation was not in Brianna's best interests. Based on the absence of a strong bond between the father and the child, inconsistent visitation by the father, and the father's failure to see the child in over one year, we discern no abuse of discretion in the judge's determination that a visitation order was not required.

Conclusion. The decree as to the mother is vacated, and the case is remanded to the Juvenile Court for further proceedings consistent with this memorandum and order. The decree as to the father is affirmed.

So ordered.

By the Court (Milkey, Singh & Brennan, JJ.[11]),

*Joseph F. Stanton*

Clerk

Entered: July 5, 2023.

---

[11] The panelists are listed in order of seniority.