NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-182

ADOPTION OF VELMA (and a companion case).[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2019, the Department of Children and Families (department) filed two separate care and protection actions in the Juvenile Court regarding the children, Velma and Cynthia.[2] The judge denied the father's motions to bifurcate the two cases, and, after a trial, the judge issued decrees terminating the mother's rights to both children and the father's rights to his child, Cynthia.  We affirm.

Discussion.  1.  Mother's appeal.  The mother argues that the decrees terminating her rights to Velma and Cynthia must be vacated because the judge violated her right to counsel in three ways:  first, in failing to hold a hearing on the mother's

---

[1] Adoption of Cynthia.  The children's names are pseudonyms.
[2] The first action, involving the mother, Velma, and Velma's father was filed in February 2019.  Velma's father died during the pendency of that litigation.  A second action, involving the mother, Cynthia, and Cynthia's father was initiated in September 2019.  The two cases were tried together.  The mother and Cynthia's father, whom we refer to here as "the father," are the appellants here.

counsel's motion to withdraw from representation before trial; second, in improperly concluding that the mother made a valid waiver of her right to counsel at trial; and third, by failing to reconsider the validity of the mother's waiver of counsel when, on the fourth day of the trial, standby counsel raised a concern about the mother's mental health. We address each of these arguments in turn.

a. Failure to hold hearing on the mother's motion to appoint new counsel. Several weeks before trial, the mother's counsel moved to withdraw. As grounds for the motion, counsel indicated that the mother had discharged her; she also represented that "the attorney client relationship has broken down." We reject the mother's assertion that the trial judge violated her right to counsel by refusing to schedule a hearing on this motion. For one thing, the judge did not refuse to schedule a hearing.[3] Rather, she denied the motion to withdraw "in part, administratively," but provided that the motion "may be renewed on the day of trial, as the court is unable to schedule a hearing prior to that date." As ordered by the judge, the mother filed a written plan with the court indicating that the mother would represent herself at trial with standby counsel. The mother's attorney did not renew her motion to

_____

[3] We note that the trial was held at a time when the Juvenile Court was conducting hearings and trials virtually.

2

withdraw on the first day of trial, nor did she otherwise indicate that the mother wanted to hire new counsel.

Recognizing that the mother agreed to proceed with standby counsel "[w]ithout another option," we assume for the sake of argument that counsel's motion to withdraw implied an accompanying request by the mother for appointment of new counsel.  However, even if mother had requested new counsel, we conclude that by failing to raise an objection to the judge's "administrative" action in the trial court, the mother's argument that she was improperly denied a hearing on the motion was waived.[4]  See Care and Protection of Zeb, 489 Mass. 783, 787 (2022) (objection not raised at trial deemed waived).

b.  Validity of the mother's waiver of counsel.  Next, we turn to the mother's challenge to the validity of her waiver of counsel on the first day of trial.  "[W]e look to the criminal law to determine the validity of a purported waiver of counsel in a proceeding which operates to terminate parental rights." Adoption of William, 38 Mass. App. Ct. 661, 663 (1995).  Before accepting the mother's waiver of counsel, the judge was

---

[4] If the judge had denied the mother's request for a hearing outright, our analysis might have been different.  However, given the judge's written acknowledgment of the mother's request for a hearing and her contemplation of a hearing on the first day of trial, we discern no error where the mother did not take any further action related to a hearing on the motion to withdraw.

obligated to "determine both that the waiver [was] knowing and voluntary and that the [mother] [was] competent to make it."[5] Commonwealth v. Haltiwanger, 99 Mass. App. Ct. 543, 555 (2021), citing Godinez v. Moran, 509 U.S. 389, 400-401 (1993). See Commonwealth v. L'Abbe, 421 Mass. 262, 268-269 (1995) (two-part inquiry required). To prevail on her challenge to the validity of her waiver of counsel, the mother must prove the invalidity of that waiver by a preponderance of the evidence. See Adoption of William, supra at 664. "The validity of [the] waiver depends on the particular facts and circumstances of each case." Adoption of Olivia, 53 Mass. App. Ct. 670, 676 (2002), quoting Adoption of William, supra. In conducting our review, we accord "substantial deference" to the judge's findings of fact on the question of waiver, but our review of the judge's application of the law to her factual findings is de novo. See Commonwealth v. Means, 454 Mass. 81, 88 (2009).

First, we consider whether mother's waiver of counsel was made knowingly and intelligently. We review the judge's findings for clear error. See Custody of Eleanor, 414 Mass. 795, 802 (1993). "The focus of our review is the [mother]'s subjective understanding of [her] decision and its

---

[5] This obligation is distinct from the judge's duty to ensure that the defendant is competent to stand trial. See Commonwealth v. Haltiwanger, 99 Mass. App. Ct. 543, 555-556 (2021).

4

consequences"; waiver "may properly be based on the background, experience, and conduct of the [mother] and the circumstances of the case" (citation omitted). Commonwealth v. Pamplona, 58 Mass. App. Ct. 239, 241 (2003). Here, we are satisfied that the mother demonstrated the requisite "subjective understanding of [her] decision and its consequences," and we are "confident that [she] was 'adequately aware of the seriousness of the [proceedings], the magnitude of [her] undertaking, the availability of advisory counsel, and the disadvantages of self-representation.'" Adoption of William, 38 Mass. App. Ct. at 665, quoting Commonwealth v. Jackson, 376 Mass. 790, 795 (1978). In reaching this conclusion, we consider the evidence in the record showing that the mother had been actively involved in the care and protection actions concerning Velma and Cynthia throughout the litigation and the indications that she understood that her parental rights were at stake in the trial. Standby counsel was not only available to the mother, but was, in fact, appointed to her. The judge also conducted a colloquy with the mother in which she cautioned her about the challenges inherent in self-representation. In this colloquy, the judge advised the mother that if she represented herself at trial, she would be held to the same standards applicable to a member of the bar, and explicitly warned her that "[she] could be at a

5

disadvantage in representing [he]rself."[6]  See Pamplona, supra at
241-242 (where "judge advised the defendant that difficulties
can attend self-representation and that knowledge of the law and
the rules of evidence would be helpful," colloquy held
"truncated . . . [but] adequate").  We discern no error in the
judge's finding that the mother's waiver was knowing and
voluntary.

Second, we consider the mother's competence to waive
counsel.  Our review here is for an abuse of discretion.  See
Commonwealth v. Scionti, 81 Mass. App. Ct. 266, 273 (2012).
Although we consider the question a close one, we give
"substantial deference to a trial judge's determination that
[the mother] is competent 'because the judge had the opportunity
to view the witnesses in open court and to evaluate the [mother]
personally.'"  Id., quoting Commonwealth v. Prater, 420 Mass.
569, 574 (1995).  See Commonwealth v. Russin, 420 Mass. 309, 317
(1995) ("[I]n reviewing the judge's determination of competency,
we must give weight to the judge's opportunity to observe the

---

[6] We acknowledge that this is not a case in which the mother
demanded that she be permitted to represent herself; her
statement that she was waiving counsel "without another option"
suggests that doing so was not her preference.  Even reading
this statement as some evidence that the mother's waiver was
equivocal, however, considering the circumstances of the
mother's waiver as a whole, we do not consider that statement
adequate to establish the invalidity of the waiver by a
preponderance of the evidence.  See Adoption of William, 38
Mass. App. Ct. at 664.

defendant's demeanor during the trial and the plea hearing").
Doing so, we conclude that the mother has failed to show that
she was not competent to waive her right to counsel.

We begin by noting that although the judge appears to have
been assigned to the case shortly before the trial, the docket
reflects that she had at least one opportunity to interact with
the mother in the court room before the trial began.  See
Scionti, 81 Mass. App. Ct. at 273 (judge "entitled to place
great weight on her own communications with the [mother]").
Additionally, as we have discussed, the judge conducted a
colloquy with the mother before accepting her waiver of counsel,
ultimately, if inferentially, finding the mother to be
competent.[7]  Although in light of the concerns raised by the
mother's standby counsel about the mother's mental health, and
with the benefit of hindsight, the colloquy might have included
a more probing inquiry into the mother's mental health status at
the time of the waiver, see Means, 454 Mass. at 96 ("The scope
of the inquiry into a mentally ill defendant's competence to
waive counsel and self-represent are determined by the

---

[7] We infer this finding from (1) the judge's acceptance of the
mother's waiver of counsel and (2) her contemporaneous rejection
of a suggestion by father's counsel that the mother lacked
competence to stand trial.  When father's counsel suggested that
the mother suffered from "a [mental] health issue that will
affect her ability to represent herself," the judge responded,
"[o]nce or if those issues are presented," she would reconsider
the question of the mother's competency (emphasis added).

circumstances at hand"), we are satisfied that it provided sufficient evidence of the mother's competency to make a valid waiver of counsel. Cf. Haltiwanger, 99 Mass. App. Ct. at 555-556 (where defendant's presentation led to judge's development of "bona fide doubt" as to his competence, judge obligated to inquire further).

Although, as the mother points out in her brief, her trial testimony indicated that she had, in fact, suffered from mental health challenges and had undergone related voluntary and involuntary mental health treatment, held unusual spiritual beliefs, and believed that she had paranormal powers, the judge who heard the testimony in its entirety explicitly found "that there was absolutely nothing in mother's presentation that leads this Court to believe she is unable to represent herself or [is] otherwise incompetent." Granting the judge's findings the deference to which they are entitled, see Scionti, 81 Mass. App. Ct. at 273, we cannot say that the judge abused her discretion in concluding that the mother was competent to waive counsel. Reviewing the propriety of the waiver de novo, we conclude that the mother has failed to demonstrate the invalidity of her waiver of counsel at trial.[8] See Adoption of William, 38 Mass. App. Ct. at 664.

---

[8] We are not persuaded by the mother's contention that the judge's decision was based on her finding that the mother had

8

c.  Denial of request for Haltiwanger evaluation.  For similar reasons, we are not persuaded that the judge abused her discretion on the last day of trial when she declined to order a competency evaluation for the mother in response to standby counsel's filing of a motion under Haltiwanger, 99 Mass. App. Ct. at 556-557.  In Haltiwanger, we ruled that "where the judge has a bona fide doubt about the defendant's competence [to waive counsel]," the judge is obligated to conduct a separate inquiry into the question, on the record and accompanied by written findings.  Id. at 556-557.  Notably, however, in that case, it was apparent from the record that the judge did have the requisite doubt about the defendant's competence.  See id. at 559 (noting judge "sua sponte raised a concern about the defendant's competency").  Here, by contrast, the opposite is true.  After presiding over four days of trial, including the mother's extensive testimony about, among other things, her

---

made "an implied waiver by conduct" of her right to counsel based on her apparent difficulty in working with the attorneys appointed to her during this litigation.  See Adoption of Raissa, 93 Mass. App. Ct. 447, 452 (2018) (describing requirements for parent's "waiver by conduct" of right to counsel).  That concern appears to be rooted in the judge's references to the "constitutional crisis" created by the very real shortage of attorneys available for appointment to qualified families involved in care and protection litigation.  We recognize the accuracy of the judge's characterization of the problem as a "crisis," and offer no solutions to it here, but we urge judges to avoid any suggestion that the attorney shortage provides a proper basis on which to deny an otherwise eligible parent appointed counsel in a care and protection action.

belief systems and history of mental health treatment, the judge explicitly stated that she had no concerns about the mother's competency. We discern no abuse of discretion or other error in the judge's failure to conduct further inquiry into the matter under Haltiwanger.

2. Father's appeal. On appeal, the father contends that the judge erred in finding him unfit, prejudiced him by improperly allowing the department to enter evidence about crimes for which the father was acquitted, and abused her discretion in failing to bifurcate his trial from that of the mother.

a. Sufficiency of the evidence of unfitness. Before terminating a parent's rights to a child, a judge must find by clear and convincing evidence that the parent is unfit. See Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021). "'[P]arental unfitness' means 'grievous shortcomings or handicaps' that put the child's welfare 'much at hazard.'" Id., quoting Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997). In making this determination, "the judge 'may consider past conduct to predict future ability and performance.'" Adoption of Jacob, supra, quoting Adoption of Katharine, supra at 32-33.

Here, the judge's findings span more than forty-five pages, and include detail that reflects the judge's careful consideration of all the evidence presented at trial. The judge

conducted an even-handed assessment of the evidence, noting, for example, that the father completed some of the tasks included in his action plans, participated in visits with his child and was "engaged" in those visits, and had made progress in addressing some of his mental health and substance abuse concerns. She made other findings, however, that reflected poorly on the father's parenting ability. As examples, the judge found that the father refused to engage in certain services included on his department action plan and failed to benefit from some of the services in which he did engage (notably, those related to addressing domestic violence). See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) (evidence of parents' failure to maintain service plans and refusal to participate in counseling programs relevant to fitness determination). She took into account that the father's repeated incarcerations presented obstacles to his ability to be present for his child, see Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001), and found that the father was unable to prioritize the child's welfare over his own relationship with the mother. The judge's greatest concern, however, appears to have been the long and apparently intractable history of domestic violence between the mother and the father, a pattern she determined was almost certain to continue, given the mother's and father's insistence on coparenting Cynthia. See Adoption of Xarissa, 99 Mass. App. Ct.

11

610, 618-619 (2021) (parent's history of domestic violence, including in relationship in which parent intended to stay, predictive of parent's indefinite unfitness).

While no single factor is determinative of parental unfitness, see Care & Protection of Yetta, 84 Mass. App. Ct. 691, 695 (2014), it is well settled "that exposure to domestic violence works a 'distinctly grievous kind of harm' on children," Adoption of Talik, 92 Mass. App. Ct. 367, 374 (2017), quoting Custody of Vaughn, 422 Mass. 590, 595 (1996), "and instances of such familial violence are compelling evidence for a finding of parental unfitness." See id. at 595-596. The judge's findings, which the father does not challenge as erroneous, amply support her conclusion that despite his "capacity to love and nurture" his child, the father was unfit to parent her.[9] Where the judge also determined that termination of the father's parental rights was in the best interests of the child, Cynthia, the judge did not abuse her discretion in terminating those rights. See Adoption of Mary, 414 Mass. 705, 710 (1993).

b. Evidentiary challenge. In 2017, the father was accused of sexually assaulting a child when the child was thirteen years old. The father was acquitted of the criminal charges brought

_____

[9] The judge likewise found that the mother had the capacity to love and nurture both Velma and Cynthia.

12

against him in connection with that accusation, and at the subsequent trial of these matters testified that the alleged abuse never happened.  At trial, and over the father's objections, the judge allowed the department to introduce several exhibits related to or which referenced the sexual abuse allegations.  On appeal, the father argues that the admission of exhibits 24 (G. L. c. 119, § 51A report), 26 (family action plan), 28 (affidavit of department social worker), 29 (court investigator's report), 68 (police reports concerning sexual abuse allegations against father), and 69 (police reports concerning domestic violence between mother and father) amounted to prejudicial error.[10]  We do not agree.

There was no error in the judge's admission of the 51A report (exhibit 24), see G. L. c. 119, § 51A, for the purpose of "setting the stage."  See Adoption of Querida, 94 Mass. App. Ct. 771, 778 (2019).  The family action plan (exhibit 26), department social worker's affidavit (exhibit 28), and court investigator's report (exhibit 29) were likewise admissible[11];

---

[10] Understanding that the father objected at trial to the admission of "all evidence of, and reference to" the sexual assault and abuse allegations, we confine our analysis to the arguments made in the father's brief.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).
[11] Where the court investigator was appointed on the day that the care and protection case involving the mother and Velma was filed, we understand the report to have been ordered pursuant to G. L. c. 119, § 24.

13

the father does not contend that he lacked the requisite ability to cross-examine the sources of the information incorporated in these documents. See Adoption of Luc, 484 Mass. 139, 150-151, 152-154 (2020), and cases cited; Mass. G. Evid. § 1115(b)(2)(B) (2023). Where the judge explicitly stated that she would not take the police reports introduced as exhibits 68 and 69 "for [the] truth of any statements other than firsthand observations by police officers," the admission of those exhibits was also proper.[12] See Mass. G. Evid. § 1115(b)(5). We decline the father's invitation to apply the holding of Commonwealth v. Dorazio, 472 Mass. 535, 543-548 (2015), to the facts of this case, absent any binding precedent requiring us to do so.

More to the point, even if the challenged evidence was not properly before the judge, that information was only cumulative of evidence admitted at the request of the father himself in the form of a "psychosexual risk assessment" conducted by an expert witness called by the father to testify at trial. Where the evidence to which the father objects was cumulative of other, properly admitted evidence, the father has failed to show that he was prejudiced.[13] See Adoption of Luc, 484 Mass. at 148.

_____

[12] Given our conclusion, we need not reach the question whether the police reports, exhibits 68 and 69, were properly admitted under the business records exception to the hearsay rule. See Mass. G. Evid. § 803(6) (2023).
[13] We find no support in the record for the father's claim that the judge relied on second-level hearsay to assess the

14

c.  Father's motions to bifurcate.  The father filed two
unsuccessful motions to bifurcate his trial from that of the
mother.  See Mass. R. Civ. P. 42 (b), as amended, 423 Mass. 1402
(1996).  Reviewing the judge's rulings on the motions for an
abuse of discretion, we discern none.  See Dobos v. Driscoll,
404 Mass. 634, 644-645 (1989).

The father's first motion, filed prior to trial, was
premised on (1) his view that his "interests [we]re not aligned"
with those of the mother, and (2) that based on "the
unavailability of services and programs during the . . . COVID-
19 pandemic," he needed additional time to complete his action
plan tasks and to have meaningful parenting time with his child.
Although it is true that the consolidated trials included some
evidence that bore only on the mother's case, the judge's
findings are clear that one of the central considerations in her
determination of the parents' unfitness was their unwillingness
to extricate themselves from their violent relationship and
their plans to coparent the children.  Additionally, the judge
found that the father failed to engage in most of the services
offered to him and that despite his positive parenting when at
liberty, he made himself unavailable to parent the child by his
repeated incarcerations.  The judge's denial of the father's

credibility of his denial at trial of having perpetrated the
sexual assaults of which he had been acquitted.

15

first motion to bifurcate the trial was not the result of "'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision [fell] outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).

We reach the same conclusion as to the father's second motion to bifurcate, filed after the judge accepted the mother's waiver of trial counsel.  The father's argument that his case "[was] materially prejudiced by Mother's apparent mental illness and its effect on her ability to represent herself pro se" was not supported by any showing of prejudice to the father.  To the extent that the father was arguing that the mother lacked the ability to make a valid waiver of her right to counsel, the father lacked standing to do so.

Conclusion.  The decrees terminating the mother's parental rights to Velma and terminating each parent's rights to Cynthia are affirmed.

So ordered.

By the Court (Blake, Massing & Hand, JJ.[14]),

Joseph F. Stanton

Clerk

Entered:  November 15, 2023.

_____

[14] The panelists are listed in order of seniority.

16